Transcription by CastingWords It should be used to evaluate Trooper Osborne's actions under the 14th Amendment's Due Process Clause. In County of Sacramento v. Lewis, the U.S. Supreme Court set forth a motive analysis for determining what legal standard applies, and the Court held that when unforeseen circumstances require a law enforcement officer working in the field to exercise his instinct and make instant, split-second decisions about how to proceed, his actions do not violate the Due Process Clause unless they shock the conscience. But in that case, Justice Souter was careful after going through all of the exigencies that law enforcement officers face in the field. Of course, that was a chase case, car chase case. And in that case, let me finish my question. You can wax eloquent, but I want to focus what you're going to be talking about. Because what concerns me is that Justice Souter pointed out that the officers in that case were not responsible for initiating the car chase. They were responding to the reckless action of the defendant. Justice Souter says Smith was faced with a course of lawless behavior for which the police were not to blame. Now the exigent circumstances in this case, arguably, were created by the officer who did the shooting. The other officer was astonished that there was a use of deadly force in this case. He thought the matter was under control. Now what do we do with the circumstance where the officer creates the circumstances where the victim is attempting to move out of the confrontation with the police? Where does Miller, excuse me, Williams, leave us in that respect? Your Honor, I think there are a couple of points within your question I'd like to address. The first is that what these cases focus on is the idea that there are emergent circumstances. There are several cases that have been cited to the court that take on the idea that the requires police attention. In being against Prunchak, for example, this circuit addressed that issue. That was a car chase and plaintiffs made the argument, look, you didn't need to go after the defendant. No, I understand that. I'm trying to focus on the facts of this case. I understand car chases quite well. We understand that. That's what the Supreme Court has written about. But what we have is an on-the-ground situation. You have two officers where the officer, arguably through his conduct, creates a situation which becomes self-definitional that now he gets to use deadly force because he has acted beyond what a reasonable officer ought to have done under the circumstances. I don't read Williams as giving a blank check to officers in the field to resort to deadly force when they prompt the circumstances and then use them to justify why they used it. Your Honor, I think those concerns, and I think the district court had similar concerns about how the situation played out in this case, but those concerns go to whether in fact this was conscience-shocking behavior, not which legal standard ought to apply. The case is fairly red, distinguished between the field work and office work. This indisputably was field work. No matter how the circumstances came to be, it was a field decision. They were emerging circumstances. You're begging my question, if you don't mind my interrupting and saying so. I know it's field work. I know the officers were confronted with an emergency situation. The question I'm posing to you, what happens when the emergency situation is created by the unlawful acts, arguably unlawful acts, of the officer? If that is true, Your Honor, and I don't believe that is true in this case, but if that were true in a situation, that would be a circumstance where there was a material factual dispute as to whether the conscience was in fact shocked. That would be a situation where that was fair ground for litigation under that standard. But the idea that there are concerns about how the situation played out, the case law doesn't suggest that that means we imply the reckless indifference standard. Let me ask a question along these lines. When did we decide whether to apply the reckless indifference standard as opposed to the intent to harm? Do we do it after the jury? After all the evidence is in, at that point, does the judge decide, well, this is the standard to apply, or at what point is that decision made? And at what point is a jury instructed about what standard? That decision in cases of this nature is properly made in such a sphere where it's litigated by the parties on motion early on in proceedings. It's a threshold legal issue. It's determined as a matter of law, and if the case goes to trial, the jury needs to have instructions about which standard it ought to be applying in order to determine the officer's liability. Well, the problem that I have with that is you question whether the officer acted improperly or illegally. Doesn't the jury have to find that first before, or does the district court judge say the standard is shocks of conscience, we will apply intentional disregard versus intent to kill? Does he say which standard is to be applied before the facts are determined, if the facts are disputed? I don't believe the facts are disputed as to the issues that go to the application of the standard. The facts may be disputed as to whether the conscience here was shocked, although I actually believe that, too, can and should be decided. Or as to whether the officer caused the incident by his, quotes, potentially illegal acts of escalating the situation, and in fact, his colleagues' testimony at the very beginning indicated he was very surprised that he used deadly force. He later changed his testimony, but the initial testimony was that he was very surprised. Who determines whether that's legal or illegal or whether that's what happened? How can the district court judge decide what standard is to be applied before those facts are resolved? Maybe it's just my own problem with it, but in looking at the case, how can the judge decide? Your Honor, what the case is direct is that the issues about whether the officer made the correct judgments, whether he may have escalated the conflict, don't go to the standard. We see this, for example, in Lewis, where the court said we must be very careful not to create incentives where someone can disobey a police order, where someone can, where we go reach back and second-guess the officer's decision about what his job requires. Trooper Osborne, at the moment that he fired his service weapon, had a belief that the life of Trooper Widom was in jeopardy, and he was forced in that instant to make a sudden decision. But that doesn't go to my question, excuse me, counsel. My question is not about that. My question is, at what point in time does the district judge decide what standard shall be applied? Now, we have an interlocutory appeal, unqualified immunity, and my problem with this is, on the one hand, it can be argued the officer acted beyond the scope of his administrative duties. You disagree with that. Does the judge determine that? The jury determines whether his actions, if in fact he acted with an extra-governmental objective that was beyond the limits of what was appropriate to restore order, to do his job, that could shock the conscience, and that is a jury question. But the characterization of the situation in which that occurred is a legal question that the court can determine on motion. How do we, I didn't understand, I was with you up to that last phrase. That the court can determine on motion? Yeah, the characterization of the situation, which is fact-bound. When I talked about Williams, I was talking about Lewis when I spoke. This case has sufficient briefing and the record is sufficiently clear with respect to the factors about the context in which this interaction occurred. Okay, how is it clear on this record that Trooper Osborne did not himself escalate the issue as to whether he had some motivation to harm that went well beyond normal or reasonable law enforcement objectives? Not that he couldn't have been found to have acted properly, but there is a tribal issue as to whether he did, particularly given the other troopers' immediate reactions and shock at what had happened. There's a tribal issue of fact as to whether his actions were motivated, he had an intent to cause harm that was outside of a legitimate governmental objective. That should be litigated under the shocks of the conscience. Well, the whole thing is shocks the conscience. I mean, the question is, the overarching standard is whether it shocks the conscience. You either get there through a deliberate indifference, which are the prison cases, or you get it through a tougher standard, which is intent to harm, which you are articulating, I believe, in your current answer. Overarching is the whole issue as to whether it shocks the conscience. That's the 14th Amendment standard. The question is whether you look to deliberate indifference as you do in the 8th Amendment context when you're talking about deliberative ignorance of somebody's health in prison. What the court in Lewis made clear was when you're out in the field and you do not have time for deliberation, you have to make split-second choices. Lewis also made a point, however, of saying, but this was a situation, this car chase was a situation that was not created by the police. It was created by the victim. In this case, there is evidence suggesting this emergency was created by Trooper Osborne. Your Honor, Trooper Osborne responded to a dispatch call. He went to this location and he initiated contact with the occupant of the vehicle because he was called over dispatch to do so. That alone is enough to place this into the category of an emerging situation where the shocks the conscience standard apply. Once he got there, the circumstances, both his own reactions, his instinctual reactions, as well as Casey Porter's behavior, forced him to make a series of judgments. The conflict certainly did escalate from a routine investigation, from a welfare check, from investigation of a suspicious vehicle into something much more significant. Both parties on the scene had a role in escalating that. If Casey Porter had showed his hands so that the officer was certain there was not a weapon in the car, if he hadn't attempted to elude the police, if he hadn't acted in a way that gave the officer a belief that the life of Trooper Whittum was in danger, things might have played out differently. Those are exactly the type of instinctual judgments that the law speaks about in using the shocks the conscience standard. I'd also like to address, there have been two questions from the court, comments about Trooper Whittum's use of the word shock, and I'd like to address that because I think it's significant. Trooper Whittum gave a statement that said he was shocked by how things happened. That was not, and could not have been, a legal conclusion about the proper standard to be applied. That was a human expression of shock, of fright, as I think any of us would feel shocked if we witnessed a police interaction of this nature at a close distance. Certainly those comments can't be... It said, I think it was he was shocked because he did not believe the circumstances warranted shooting. You could interpret his statements that way. It's also true that he had drawn his service weapon and had his finger on the trigger ready to fire because his police instincts, too, told him there was something here that might require the application of force to protect the public safety. Those questions, Your Honor, go to whether, in fact, the conscience was shocked, and not whether that's the legal standard. And that's an issue, as I think the questions from the bench have indicated. I don't think we're confused between his statement of shock and the legal standard, but thanks for the help. I would ask that if the court has concerns, as it seems the court may, about whether this was conscience-shocking behavior, that the case be remanded so that issue can be litigated. I think that's what the case is all about, isn't it? I think that's what the case should be all about, Your Honor, but the district court's decision by applying the reckless indifference standard... I think it was deliberate indifference. The case has used the terms almost interchangeably, yes, Your Honor, but by applying that standard as opposed to the shock, the conscience standard, what the district court did was muddied up the record and the legal standards that apply in cases of this type in the federal and the state courts in Alaska. I think we can agree that the record seems muddied. Thank you, Your Honor. Counsel? My name is Mark Osterman and I represent Mr. and Mrs. Porter. I don't really want to belabor the points, except that the issue of qualified immunity seems to be the characteristic thing that sits before the court, and it has always bothered me that in qualified immunity we have a two-tier step that we hear about in Kent v. Saucere. And that particular two-tier step, the first step, is why I think we cannot get anywhere because the constitutional, underlying constitutional issue stands in the way of resolving the issue of qualified immunity. The facts of this case are the single most troubling aspect, and I think that you've touched upon those. I'm not going to beat my dead horse that I've beaten so badly in my opening brief. Well, let me just get you to focus on what at least is concerning me. My reading of the cases is that we're looking at, under the 14th Amendment due process, the substantive due process, the standard that shocks the conscience. There are two standards, two approaches to how you get there. In the prison-type setting, as Lewis discusses, where there is time for deliberation and the like, you have the deliberate indifference standard. Lewis makes clear that at least in exigencies like a car chase, you have to go to a much higher standard of proof as to what the officer's conduct involved, which is making split-second decisions. And it's now you have to establish that his motivation was not proper law enforcement, but was in fact intended to inflict harm for his own purposes. And you can establish that by proving a variety of circumstances, one assumes. And Justice Souter's opinion seems to suggest that one factor you may take into account is that it was the officer who created the emergency. I don't know where the log is completely on that. I'm not clear. If you have any thoughts on that, that would be helpful. But as I understand it, the district court was applying the deliberate indifference standard, and I have a lot of trouble going to that lesser standard in light of the Lewis case. There's a case of Long versus County of Honolulu that this circuit responded to and decided in 2007. And that particular case was a sniper that shot and killed a man who had been abducted by several members, shot his gun at police officers. We have a shooting case, not a car chase case, by which we can make the comparison. And in focusing on the issue of qualified immunity, the court said, look, the police were responding to the illegal conduct of this person, and we're not going to give anything but qualified immunity to the police sniper that pulled the trigger in this particular case. Because of the issues at hand, we then compare it to the... No, but let me ask you this. Do you know what the standard was that was applied in the law? I do. I do, and I have the case in front of me. And it raised that the claims of excessive deadly force are analyzed under the Fourth Amendment unreasonable standard. The court also looked in that case at Tennessee versus Garner. I'm aware, Your Honor, that you were on that particular panel. Those are Fourth Amendment cases. Well, the Fourth Amendment, nevertheless, and I want to raise this issue, is I don't want to sidetrack the court too much, but I want to say... No, but you still haven't gotten to the First Amendment issue. The question is, what standard was applied in law? The standard that was applied in law was the, I believe, was the deliberate... I don't have to tell you the difference, but it was the lesser standard. Shocks judicial conscience. Well, that's... But it didn't get past... Shocks of conscience, it's not deliberate indifference. Right, but it didn't get past the first step. That's why I'm... And in this case, this case can't get past the first step on behalf of... Do you agree... Let's break it down. Do you agree that in this case, this case is governed at this stage by the shocks of conscience standard? No, sir. You don't? No. But I think that even if we applied that standard, we would get the same result. Well, what standard do you think applied? I think deliberate indifference standard applied. The one that hit the court. Right, but I want to mention also here, there's a First Amendment claim here, and the state... I'm sorry, excuse me, the... First Amendment. Trooper Osborne glossed over it by saying there's a First Amendment claim for consortium and association that gets subsumed under the 14th Amendment by general analysis. There's a First Amendment claim. A First Amendment claim cannot be resolved, according to me, unless you look to see whether a Fourth Amendment taking has occurred. I'm not litigating a Fourth Amendment. I'm saying a Fourth Amendment seizure or taking did in fact occur. Counsel, maybe you can clarify my confusion. Yes, ma'am. Under either standard, reckless indifference, deliberate indifference, or intent to harm, both go to shock the conscience. Shock the conscience is the overarching concept, and then you have the lesser standard and the greater standard. Am I mistaken? Well, I think that we're arguing that there are two standards applied. I don't disagree with your analysis, but so far in the argument of Trooper Osborne, we have the argument on one hand that we have this reckless indifference standard, which they think should be applied and that the court cannot get to. The problem that's already been mentioned by this court is that the facts have not been well established. We have not heard from police standards. We don't know why a police officer is carrying a pistol in his hand as he walks beside a car threatening somebody in a car that doesn't match the right description. All the facts that are so problematic in this case, and it needs to go back to the district court for a trial on these facts. No, no, no, no. But the standard here, you see, I mean, we take the record as it is now, and because we can only decide the legal question of whether qualified immunity is applied, it's almost like summary judgment, you know what I mean? We construe the factual record in your favor. So if we draw a little difference in that, we say, in that context, is the officer entitled to qualified immunity? So I don't have the problem that you have with the record. I mean, I realize there's those ambiguities that would be resolved if it went to trial, but on this record here, I think it's sufficient to decide whether or not qualified immunity applies. I think that the factual record wasn't completed in the district court. We had not concluded discovery when this motion hit, and when this motion was resolved, and the interlocutory appeal outed it. There were named witnesses that were not... Did you ask for more discovery before that? No, we had actually named a police standards expert who would come forward and testify, and they had a police standards expert. We had not had depositions yet of those particular experts. We were not at a stage where there was a finality of the facts to resolve this case. And if the issue of immunity involves a two-tiered nature, the first thing we have to establish is, was there a constitutional violation under Katz? And the answer is, yes, there was. Now, we're not asking for the actionable constitutional violation, but for a constitutional violation. Did it occur? Then the second thing is, if it happened that there was a constitutional violation, is there a reason why this officer should not be held accountable? And that's where we get the big no. Because the facts that we cannot agree upon are basic facts to any basic criminal law. And that is, a police officer being dispatched by a police dispatcher does not have probable cause to intervene in people's lives, pull guns, and shoot them from behind, simply because they won't obey a man running down the road with a gun in his hand, yelling, stop, and pepper spray, and never identifying himself as a police officer. That's not a standard. But those facts alone in front of a jury, I think, might shock the jury. I think that the concept that somehow or other the facts that don't shock you aren't enough facts that the public bothers me, because I think if it shocks judicial conscience, it shocks the people's conscience as well. And we have jurors for that. We have jurors that help us with that standard, whether it shocks them or not. So when we get to the facts of this case, was there a constitutional violation? Yes. What was it? When that police officer pulled that gun and fired that gun, he took away my client's ability to be with his family. Forever. Does that shock conscience? Well, I think, all right. Well, you know, it depends on whether or not a reasonable person would have concluded that that person posed a danger of bodily harm to Officer Whittem. Right? And I think it's a good back-to-back question. Officer Whittem was standing at about 10 o'clock on the clock. I'm not suggesting what the answer is. I'm just saying, you know, whether or not it's a constitutional violation. I think it depends on the answer to that question. Also, it goes to Trooper Whittem, who said he was shocked. I know what he said the first time and the second time. Yes. And the third time. Can I ask a question? How much discovery was completed? You say there was no discovery? There were depositions. We had deposed Trooper Whittem and Trooper Osborne. And where are the exhibits that were referred to in those depositions? Are they part of the record? They should be. And I'm almost positive that they are. And if they aren't, then it was purely an oversight on my part. But those are the only two depositions that had been taken at that point when the motion for summary judgment was taken. So any depositions that were taken, the exhibits that were part of those depositions, be they photographs or whatever, are in the record? I'm positive that they are. I don't think all of them are, but I think a substantial number of those photographs show up in the record. What other depositions would help? Well, the police standard. What's the standard for a stop in this situation? What should police officers be doing? There was also a speed issue. How fast was Mr. Porter's car traveling? My expert says 1 to 3 miles an hour. Their expert says 3 to 15. We need to hassle and rassle that particular issue down. There were other issues. That's certainly not going to be helpful on a motion for summary judgment, but you didn't make a Rule 56-F motion anyway, did you? You'll have to forgive me, but I do most of my work. In other words, you didn't. You didn't tell the judge, well, you shouldn't decide this motion yet until we've had the opportunity to finish discovery? I would ask you to go back and look at the record of argument in the middle of the motion because one of the things I raised is that the judge also was going to stay for their discovery since the issue of immunity had been raised, and I went, whoa, whoa, we've got people that we need to talk to and people who could be dying, and I want to get these records made, and he said no. So we did certainly raise an issue about we are not yet factually complete, but, of course, we were the successful party expecting to go to trial on the case, not anticipating that there would be an argument. Are you prepared for trial now? How soon can I be ready, Your Honor? What I'm getting at is since you won this issue in the district court, have you been going ahead to prepare for trial? I'm prepared as I can be, but the district court judge has ordered no further discovery, so I...  I stayed. He stayed the case pending this appeal and the result of the immunity issue, and my hands are tied. All right. All right. Okay. Thank you. Thank you. Do you need any time? Your Honor, I know my time has expired, but if I could just say one of just a very short remarks. Court Judge Nickelodeon did not file a report to the defendant. Issues about police standards, issues about things of that nature simply are not material under this type of collateral litigation. This isn't a Fourth Amendment case. This isn't the core place in which case reporters, heirs, and personal representatives can litigate Fourth Amendment reasonableness. That type of litigation, it's a matter of public record, has been conducted, and it has been resolved in Alaska State courts by case reporters' representatives. The 14th Amendment under Section 1983, there is a high bar for recovery, and that is by design because the due process cause as litigated through Section 1983 is not intended as a federal common tort law. I think we know that. Thank you, Your Honor. Thank you very much. I appreciate the arguments. The case argued as submitted. All rise. If you leave that on the bench, I'll bring it in to you. This court for this session stands adjourned. Thank you. Yeah. Thank you.
judges: Nelson, Tashima, Fisher